# Exhibit A

Execution Copy

## SETTLEMENT AGREEMENT AND RELEASE

THIS SETTLEMENT AGREEMENT AND RELEASE ("Agreement") is made and entered into on the last date set forth on the signature pages below ("Effective Date"), by and among JPMorgan Chase Bank, N.A. ("JPMorgan"), Banc One Building Corp. ("Banc One"), their successors and assigns (collectively, JPMorgan, Banc One and their successors and assigns, may be referred to as "Chase" or the "Defendants"), and Michelle H. Chow, Chapter 7 Trustee (the "Trustee") of the bankruptcy estate for Wingspan Portfolio Advisors, LLC ("Wingspan" or the "Debtor"). Collectively, Defendants and Trustee shall be referred to as the "Parties."

### RECITALS:

A. On July 13, 2015 (the "Petition Date"), the Debtor filed a voluntary petition under chapter 7 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Eastern District of Texas, Sherman Division (the "Bankruptcy Court"), initiating bankruptcy case no. 15-41255-btr (the "Bankruptcy Case").

B. The Trustee was appointed under the Bankruptcy Code and is vested with the authority and right to prosecute and settle certain causes of action on behalf of the Debtor's bankruptcy estate.

C. The Trustee identified payments made to or for the benefit of Chase in the amount of $1,122,000.00 and $59,407.89 (such identified payments collectively defined as the "Transfers").

D. The Trustee has filed that certain *Complaint to Avoid and Recover Preferential and Fraudulent Transfers* (the "Complaint"), styled as *Michelle H. Chow, Chapter 7 Trustee v. JPMorgan Chase Bank, N.A. and Banc One Building Corp.*, Adversary Proceeding No. 17-04064 (the "Lawsuit"), under which the Trustee seeks to avoid and recover the Transfers.

E. On November 14, 2017, after obtaining several stipulated extensions from the Trustee, Chase filed the *Defendants' Motion to Dismiss Complaint Pursuant to Federal Rule of Civil Procedure 12(b)(6)* (the "Motion to Dismiss"). Thereafter, on February 16, 2018, Chase filed a timely *Answer to Plaintiff's Complaint to Avoid and Recover Preferential Transfers* (the "Answer") to the Lawsuit.

F. Chase denied liability for any portion of the Transfers and has asserted defenses and affirmative defenses in the Lawsuit.

G. By virtue of this Agreement, the Parties desire to fully and completely resolve this matter in good faith, and settle any and all claims, defenses, and/or counterclaims that were asserted or that could have been asserted in the Lawsuit.

NOW, THEREFORE, in consideration of the promises and the mutual covenants of the Parties stated in this Agreement, the receipt and sufficiency of which are hereby acknowledged, the Parties hereby agree as follows:

1

4811-1231-6768.6.
ID\KAUFMAN, AARON - 701674\000155

Execution Copy

1. **Non-Admission of Liability.** Nothing in this Agreement shall constitute or be construed as an admission of liability on behalf of Chase or the Trustee, their agents, affiliates, assigns, parents, subsidiaries, and/or successors, or an admission as to the validity of the allegations in the Lawsuit or the Answer and defenses. It is also understood and agreed to by the Parties that this Agreement does not constitute an order or finding of any violation of law related to fraudulent, manipulative, or deceptive conduct.

2. **Voluntary Agreement/Attorney Representation.** The Parties represent that in the execution and negotiation of this Agreement, they are represented by counsel of their choice and that said attorneys advised their respective clients with respect to the advisability of making the settlement and release provided herein and of executing this Agreement; or if they are not represented by counsel, that they had the opportunity to consult legal counsel of their own selection and the decision not to be represented by counsel is a decision that the Parties have freely made. The Parties further represent and warrant that they are fully aware of the terms contained in this Agreement, made any desired changes, and have voluntarily and without coercion, duress, or undue influence of any kind, entered into this Agreement and the documents executed in connection with this Agreement.

3. **Terms.** As full and final settlement of the Lawsuit, the Parties agree as follows:

    a. **Effective Date.** This Agreement shall be binding on the Parties upon execution by both Parties and entry of an order of the Bankruptcy Court authorizing the Trustee's execution of this Agreement. The waivers and releases provided in Paragraphs 4, 5 and 6 below shall become effective upon the payment of the Settlement Amount (as defined in Paragraph 3.b below) to the Trustee (the "Effective Date").

    b. **Payment.** As soon as practicable following entry of the Bankruptcy Court order described in Paragraph 3.a above and receipt of a properly completed IRS form W-9 from Trustee, Chase shall pay or cause to be paid to the Trustee the sum of Two-Hundred Thousand Dollars ($200,000.00) (the "Settlement Amount") by check payable to "Michelle H. Chow, Chapter 7 Trustee."

4. **Waiver of Claims.** Trustee hereby knowingly, intentionally and voluntarily waives any and all claims that were raised or that could have been raised, in contract or tort, including negligence, whether known or unknown, between Chase and the Trustee in the Lawsuit, except for any rights and/or claims relating to the enforcement of the terms hereof, all which are hereby expressly reserved. Trustee further waives the right to appeal or challenge any and all judgments, decisions or orders, or any portions thereof, issued in the Lawsuit in favor of Chase or against the Trustee. Trustee's waiver of any claims under this Section 6 shall not be effective until the Settlement Amount is received in good funds and deposited into the Trustee's bank account.

5. **Releases by the Trustee.** Except as otherwise set forth in this Agreement, in consideration of the promises, covenants and agreements set forth herein and for other good and valuable consideration, Trustee for herself, Wingspan and its bankruptcy estate and the Trustee's agents, attorneys, representatives, predecessors, successors and assigns (collectively "Trustee Releasor") hereby waives, remises, releases, acquits, satisfies, and forever discharges

2

Execution Copy

Chase, and Chase's past, present and future officers, directors, heirs, agents, servants, employees, legal representatives, assigns, successors, affiliates, shareholders, beneficiaries, predecessors, insurers, administrators, and successors in interest; Chase's parent, holding, subsidiary, affiliated, and related entities; any business entity or division owning or controlling Chase in whole or in part; any business entity or division owned or controlled in whole or in part by Chase, and any loan investor or servicer that has any interest whatsoever in the Transfers or other matters asserted in the Lawsuit (all of the foregoing persons and entities are hereinafter collectively referred to as the "Released Parties"), of and from all manner of action and actions, cause and causes of action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, executions, claims, and demands whatsoever, in law or in equity (collectively "Released Claims"), which Trustee Releasor and the Trustee Releasor's attorneys, agents, representatives, predecessors, successors, spouses, and assigns, ever had, now has, or which any personal representative, successor, heir, or assign of Trustee hereafter can, shall, or may have against the Released Parties, for, upon, or by reason of any matter, cause, or thing whatsoever, from the beginning of the world to the Effective Date of this Agreement, specifically relating to, arising out of, or in any way stemming from Transfers, and/or any claims or defenses that Trustee raised or could have raised in the Lawsuit. Notwithstanding the foregoing, nothing in this Paragraph shall release the Parties' obligations under this Agreement. Further, the Trustee is specifically not releasing B.H. Melbourne Delaware, LLC from any claims related to the Transfers, nor does the Trustee release any rights or remedies concerning receivables that are unrelated to the Transfers and due from persons other than Chase.

6. **Releases by Chase.** Subject to and conditional upon the obligations of this Agreement, Chase hereby remises, releases, acquits, satisfies, and forever discharges Trustee, and Trustee's respective heirs, agents, attorneys, representatives, and assigns, from all claims, liabilities, actions, causes of action, demands, rights, damages, costs, attorney's fees, court costs, expenses, and compensation which Chase ever had, now has, or which any successors or assigns of Chase hereafter can, shall, or may have against the Trustee, including Trustee's heirs, personal representatives, successors and/or assigns, for, upon, or by reason of any matter, cause, or thing whatsoever, from the beginning of the world to the Effective Date of this Agreement specifically relating to, arising out of, the Lawsuit, with the exception of the Parties' obligations under this Agreement.

7. **Representations and Warranties.** Trustee represents and warrants to Chase that Trustee is not aware of any third party or organization claiming to have or having any interest in the claims and causes of action resolved by this Agreement and Trustee is the sole owner and holder of the claims released herein. Additionally, Trustee has not assigned, hypothecated, or otherwise transferred any interest in the claims and causes of action resolved by this Agreement.

8. **Dismissal.** As soon as practicable after receipt of the Settlement Payment, the Trustee will file an agreed motion, notice or stipulation of dismissal with prejudice such that the Bankruptcy Court may dismiss and close the Lawsuit, with each Party bearing its own costs.

9. **Entire Agreement.** This Agreement constitutes the sole and entire agreement between the Parties and supersedes all prior and contemporaneous statements, promises, understandings or agreements, whether written or oral.

3

Execution Copy

10. **Amendments.** This Agreement may be amended, modified or altered at any time upon the approval of the Parties; however, any such amendment must be in writing and signed by all Parties in order for such amendment to be of any force and effect.

11. **Partial Invalidity.** In the event that any provision of this Agreement is declared by any court of competent jurisdiction or any administrative judge to be void or otherwise invalid, all of the other terms, conditions and provisions of this Agreement shall remain in full force and effect to the same extent as if that part declared void or invalid had never been incorporated in the Agreement and in such form, the remainder of the Agreement shall continue to be binding upon the Parties.

12. **Survival.** All representations and warranties contained herein shall survive the execution and delivery of this Agreement, and the execution and delivery of any other document or instrument referred to herein.

13. **Applicable Law.** This Agreement shall be subject to and governed by the laws of the State of Texas, without regard to conflict of law rules. The Parties hereby consent to jurisdiction and final adjudication in the Bankruptcy Court for any action arising out of, under or in connection with this Agreement, and that venue is proper exclusively in Bankruptcy Court, for any action arising out of this Agreement.

14. **Costs.** Unless otherwise provided in this Agreement, the Parties have agreed to bear their own attorneys' fees and costs, including all costs related to the Lawsuit, and the preparation of any and all documents necessary to enter into this Agreement.

15. **Counterparts.** This Agreement may be signed and executed in one or more counterparts, each of which shall be deemed an original and all of which together shall constitute one Agreement. Delivery of an executed counterpart of a signature page of this Agreement by facsimile or email shall be effective as delivery of an originally executed counterpart of this Agreement.

16. **Tax Consequences.** Trustee acknowledges and agrees that the Debtor's bankruptcy estate is solely responsible for the payment of any and all federal, state, city or local taxes which might be due and owing as a result of any term contained in this Agreement. The Parties acknowledge that no tax advice has been offered or given by either party, their attorneys, agents, or any other representatives, in the course of these negotiations, and each party is relying upon the advice of its own tax consultant with regard to any tax consequences that may arise as a result of the execution of this Agreement. Trustee acknowledges that Trustee, solely in her role as trustee of the Debtor's bankruptcy estate, may be required by Chase to submit a Form W-9 and that Chase may be required to issue a Form 1099 or other tax form reporting the consideration flowing to the Trustee as representative of the Debtor's bankruptcy estate under this Agreement to the Internal Revenue Service and/or other taxing authority.

17. **No Adverse Construction.** In the event any part of this Agreement is found to be ambiguous, such ambiguity shall not be construed against any Party.

4

Execution Copy

18. **Not Evidence.** This Agreement shall not be used as evidence in any proceeding other than one to enforce this Agreement, or one seeking damages arising from a breach of this Agreement.

19. **Authority.** The Parties represent and warrant to each other that each is the sole and lawful owner of all right, title, and interest in and to every claim and other matter which each releases in this Agreement. In the event that such representation is false, and any such claim or matter is asserted against either Party by anyone who is the assignee or transferee of such a claim or matter, then the Party who assigned or transferred such claim or matter shall fully indemnify, defend, and hold harmless the Party against whom such claim or matter is asserted and its successors from and against such claim or matter.

20. **Notice.** Unless otherwise specified herein, all notices, requests, consents, approvals, demands or other communications to the Trustee shall be sent to the Trustee, through her counsel, via e-mail to Michelle E. Shriro (mshriro@singerlevick.com) and Todd Hoodenpyle (Hoodenpyle@singerlevick.com).

21. **Further Assurances.** The Parties shall perform such further acts and things and execute and deliver to the other Party such additional agreements, powers and instruments, as Chase may reasonably require or reasonably deem advisable to carry into effect the purposes of this Agreement or to better assure and confirm unto each Party its respective rights, powers and remedies hereunder.

22. **Jury Waiver.** THE TRUSTEE AND CHASE HEREBY IRREVOCABLY WAIVE ALL RIGHT TO TRIAL BY JURY IN ANY ACTION, PROCEEDING OR COUNTERCLAIM WHETHER BASED ON CONTRACT, TORT OR OTHERWISE ARISING OUT OF OR RELATING TO THIS AGREEMENT OR THE ACTIONS OF CHASE OR ANY OF ITS AFFILIATES IN THE NEGOTIATION, ADMINISTRATION PERFORMANCE OR ENFORCEMENT HEREOF OR THEREOF.

IN WITNESS WHEREOF, the Parties have executed this Agreement as of the date set forth below.

*[Signature Page to Follow]*

Execution Copy

## SETTLEMENT AGREEMENT AND RELEASE
### Signature Page

**MICHELLE H. CHOW, CHAPTER 7 TRUSTEE**

Dated: 4/30/2018    By: *Michelle H. Chow, Trustee*
Michelle H. Chow,
Chapter 7 Trustee for Wingspan Portfolio Advisors, LLC

\* Subject to Bankruptcy Court approval

-AND-

**JPMORGAN CHASE BANK, N.A,**
**DEFENDANT**

Dated: 5/8/2018    By: *[signature]*

Printed Name: Kammi J. Bollen
Title: Assistant Secretary

-AND-

**BANC ONE BUILDING CORP.,**
**DEFENDANT**

Dated: 5/7/2018    By: *[signature]*

Printed Name: David J. Arena
Title: President